# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NEIL B. ROEMER ) | |
| ) | |
| ) | |
| v. ) | |
| ) | |
| ) | Case No._____ |
| STACY HURD, TIM DUTTON ) | |
| INDIVIDUALLY AND TIM DUTTON ) | JURY DEMAND |
| D/B/A THE TIM DUTTON GROUP, ) | |
| PARKS VILLAGE NASHVILLE, LLC ) | |
| D/B/A PARKS REALTY, LORI SHELTON, ) | |
| UPTOWN TITLE & ESCROW, LLC, ) | |
| and JOHN DOE. ) | |
| ) | |

## COMPLAINT

Plaintiff, Neil B. Roemer, files this Complaint against Stacy Hurd, Tim Dutton, Tim Dutton d/b/a The Tim Dutton Group, Parks Village Nashville, LLC d/b/a Parks Realty, Lori Shelton, Uptown Title and Escrow, and John Doe, an individual whose identity is unknown to Plaintiff, and alleges as follows:

### I. THE PARTIES

1.  Plaintiff Neil B. Roemer ("Roemer") is a resident of Los Angeles County, California.

2.  Defendants Stacy Hurd (Hurd") is a resident of Rutherford County, Tennessee. At all times pertinent to this matter, Hurd was a licensed real estate agent in Tennessee and was engaged as a real estate agent by Parks Village Nashville, LLC d/b/a Parks Realty. Hurd can be served at 1535 W. Northfield Blvd., Murfreesboro, Tennessee, 37129.

1

3. Tim Dutton ("Dutton") is a resident of Cannon County, Tennessee. At all times pertinent to this matter, Dutton was a licensed real estate agent in Tennessee and was engaged as a real estate agent by Parks Village Nashville, LLC d/b/a Parks Realty. Dutton can be served at 1535 W. Northfield Blvd., Murfreesboro, Tennessee, 372129.

4. Tim Dutton d/b/a The Tim Dutton Group, ("Dutton Group"), on information and belief, was at all times pertinent to this matter an unincorporated business entity engaged in real estate transactions in Tennessee; Hurd and Dutton worked together under the name of Dutton Group while engaged as agents with Parks Village Nashville, LLC d/b/a Parks Realty. Dutton Group can be served at 1535 W. Northfield Blvd., Murfreesboro, Tennessee, 37129

5. Lori Shelton ("Shelton"). on information and belief, is a resident of Marshall County, Tennessee. At all times pertinent to this matter, Shelton was a title agent for Uptown Title & Escrow, LLC, with offices in Rutherford County, Tennessee. Shelton can be served at 144 Uptown Square, Murfreesboro, Tennessee, 37129

6. Uptown Title & Escrow, LLC ("Uptown Title") is registered with the Office of the Tennessee Secretary of State as a limited liability corporation. Uptown Title was formerly affiliated with or known as Atwood and Moore, a law firm located in Rutherford County, Tennessee. Upon information and belief, none of the members of Uptown Title are residents of the State of California. Uptown Title's principal place of business is located in Rutherford County, Tennessee, and can be served through its registered agent, Alexander W. Clark, 144 Uptown Square, Murfreesboro, Tennessee, 37129-0571.

7. Defendant Parks Village Nashville, LLC ("Parks Village") is registered with the Office of the Tennessee Secretary of State as a limited liability company with its principal corporate office

2

located at 8119 Isabella Land, Brentwood, Williamson County, Tennessee, and multiple local offices in the surrounding Middle Tennessee area, including Murfreesboro, Tennessee. Parks Village can be served through its registered agent, Bob Parks, Ste 105, 8119 Isabella Lane, Brentwood, Tennessee 37027-8174. On information and belief, none of the members of Parks Village are residents of the State of California. Further, Parks Village Nashville, LLC, frequently does business within this judicial district as Parks Realty ("Parks Realty").

8. Defendant John Doe ("Doe") is an unknown entity or individual directly involved in the fraudulent and criminal hacking events leading to Plaintiff's loss of funds relating to the purchase of certain real estate in Davidson County, Tennessee, the same being the subject of this lawsuit. Doe can be served pursuant to Federal Rules of Civil Procedure 4 and 5 (b)(2)(D) by leaving a copy of the Summons and Complaint with the Clerk of this Court.

## II. JURISDICTION AND VENUE

9. As required by Federal Rule of Civil Procedure 8(a)(1), this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as Plaintiff and all Defendants, including on reasonable belief members of Defendant Tennessee Limited Liability Companies, have complete diversity of citizenship, and as facially shown in this Complaint, the amount in controversy exceeds $75,000.00. This Court also has supplemental jurisdiction under 28 U. S. C. Section 1367(a).

10. Venue is proper in this Court under 28 U.S.C. § 1391 as the Defendants are residents of or have principal offices of business within the Middle District of this Court and the real property at issue is located at 3227 West End Circle, Nashville, Davidson County, Tennessee ("West End Home"), which is also within the same judicial district.

## III. FACTS

11.     Prior to February 2022, Roemer and Hurd had a business relationship where Hurd, serving as Roemer's agent, marketed, and sold real properties in Tennessee, to Roemer. At all times relative to the matter at issue, and on information and belief, Hurd was working as an employee or authorized agent of Tim Dutton and/or Tim Dutton Group and was also acting within the course and scope of her employment and/or representation and as a designated real estate agent with Parks Village. Accordingly, all acts and non-acts of Hurd are binding upon Tim Dutton and/or Tim Dutton d/b/a Tim Dutton Group.

12.     On the morning of February 24, 2022, Hurd approached Roemer about making an offer for the purchase of the West End Home.

13.     Following multiple text and email messages, Roemer agreed on the afternoon of February 24, 2022, to offer through Hurd the stated asking price for the West End Home, i.e., $343,817.28.

14.     Thereafter, the following transmittals and events occurred:

    A.      Thursday, February 24, 2022, at 9:02:02 PM: Hurd advised Roemer via text message that "...You got it!!! Close March 4th...", referencing the contract for the West End Home. Eleven seconds later at 9:02:11 PM, Hurd texted Roemer that she "…will send to title in morn…." Roemer immediately responded at 9:02:16 PM by text, "Ok."

    B.      Friday, February 25, 2022, at 6:28: 50 AM: Hurd texted Roemer that she has "…sent doc for initial…" meaning she had sent the confirmation of the acceptance to Roemer. Roemer responded at 7:21:51 AM "…Sent…" Later at 5:42:32 PM that day, Roemer texted Hurd, "When do I send the money?" Hurd responded at 6:32:17, "…Title will reach out money (sic)…" Hurd then texted at 6:32:17 PM, "...I'll call u in morn..." The reference to "Title" was to Shelton

4

and Uptown Title; Shelton was at all times relative to this matter the responsible title agent with Uptown Title. Upon information and belief, Shelton was an employee or authorized agent of Uptown Title and was acting in the course and scope of her employment or authorization with Uptown Title. Accordingly, all acts and non-acts of Shelton are binding upon Uptown Title.

C. Saturday, February 26, 2022, and Sunday, February 27, 2022: There was correspondence between Roemer, Hurd, Shelton or Uptown Title. Further, Hurd never telephoned Roemer over that weekend. However, at 12:34:11 AM that Saturday, Dutton sent an email to Shelton at the lori.shelton@atwoodandmoore.com address noting, "Subject:(EXTERNAL) Please review West End to be bound…." Here Dutton was advising Shelton to direct Roemer to make his payment by wire with these specific instructions, "… Mail away. He is California. Needs to wire funds…." This communication specifically recognizes the West End Home and appears under the blue color log "PARKS". A copy of this email is attached as **Exhibit A**.

D. Monday, February 28, 2022:

i. 6:20 AM--Unknown to Roemer, an unauthorized email was sent at 6:20 AM on that date from "Neil Roemer" to "Lori Shelton" (Defendant Shelton) checking on progress; this email was generated by Doe, the hacker, without Roemer's knowledge or consent. This email begins with the word "Greetings," and closes with the salutation "Kind regards," above the name "Neil B. Roemer." A copy of this email is attached as **Exhibit B** and incorporated herein. Plaintiff alleges there were multiple red flags within this "Greetings" email which Shelton knew, or should have known and recognized as coming from an unauthorized source:

    a. Roemer's email address is listed as nbroemerr@aol.com and Shelton's address is listed as lori.shelton@uptowntitle.net. Shelton received this

email and should have known and recognized that Roemer's address contained two "r's."

  b. Shelton knew, or should have known, that Doe, the hacker, had to have already gained access to her email account at Uptown Title, since all later email communications from Doe used Shelton's former email address of "atwoodandmoorre" (with two "r's")

  c. Shelton also knew, or should have known, that Doe was already on her account as evidenced by Hurd's comment to Roemer after discovery of the fraud that she had engaged in multiple prior business relationships with Shelton and had always used Shelton's former email address of atwoodandmoore.com (with one "r").

  d. Doe's use of the current, and correct, email account of Shelton confirms that Doe, the hacker, was already on Ms. Shelton's account, and the very terminology of "Greetings" and "Kind Regards" should have raised suspicion with Shelton. If Shelton had exercised reasonable diligence at this time, there would not have been any loss to Plaintiff.

ii.   5:14:15 PM—Hurd texted Roemer that "Title has your information and should be reaching out to you about wiring." This text was the first contact by Hurd to Roemer on February 28, 2022.

iii.   5:14:28 PM—Hurd texted Roemer that she is also "…preparing an occupancy agreement for the Seller to Sign."

iv.   5:14:53 PM—Roemer responded by text "…OK no need to call just wondering if everything was ok with the deal."

  v. 5:31:24 PM—Hurd texted "yes. All good. Call u in morn." Of note, Hurd never telephoned Roemer on February 28, 2022.

15. Plaintiff alleges that these records and events confirm that as of Monday, February 28, 2022, at 6:20 AM, Doe, the hacker, had obtained access to Shelton's email account and, in addition, Doe had obtained Roemer's personal identity and email information from Hurd's previous communications to Shelton.

16. Subsequent communications show a continued disregard for Roemer's financial interests as he attempted to close the sale by wiring funds to the designated bank. These include:

A. March 1, 2022: At 6:56:06 PM Hurd texted Roemer "...Sign docs in email plz (sic)…", referencing additional documents for Roemer to sign.

B. March 2, 2022: At 6:43:46 AM, Hurd again texted "…Plz (sic) sign…"

C. March 2, 2022: At 7:53:17 AM, Roemer responded by text, "...Did you send more stuff I signed yesterday..."

D. March 2, 2022: At 9:43:43 AM, Hurd then responded "...No..."

E. March 3, 2022: At 11:05 AM, Doe, under the email account of [lori.shelton@atwoodandmoorre.com](mailto:lori.shelton@atwoodandmoorre.com), emailed Roemer with instructions to sign a Settlement statement in blue ink and to scan and return same. The Settlement Statement was attached to that email and provided that the sale commission was to be divided with $10,197.00 payable to "Compass RE" and $10,197.00 payable to "Parks." This email and attached document confirm that Doe had obtained access to Shelton's account and that Parks Village was to receive one-half of the sales commission. A copy of this Settlement Statement is attached and incorporated herein as **Exhibit C**.

7

Case 3:22-cv-00676   Document 1   Filed 09/01/22   Page 7 of 16 PageID #: 7

F. March 3, 2022: At 3:15:01 PM, Hurd texted Roemer, "...Did u receive docs yet..."; 17 seconds later at 3:15:18 PM, she texted "...I wanted to make sure...."

G. March 3, 2022: At 3:16:46 PM, Roemer responded by text to Hurd, "...Made the wire today..."

H. March 3, 2022: At 3:30:13 PM, Hurd texted back to Roemer, "Perfect on the wire."

17. As stated, Doe had taken the role of Shelton. Doe began issuing wiring and closing instructions to Roemer. Indeed, none of Roemer's communications with Shelton were received by Shelton  Rather, Roemer followed Doe instructions and, to his detriment, his wire of $343,817.28 was redirected to Signature Bank in New York City where it was immediately withdrawn by Doe or some other unknown person or entity.

18. From Friday, February 25, 2022, to March 4, 2022, a period of seven days, Shelton never telephoned or confirmed direct contact with Roemer. Instead, Shelton's first inquiry was to Hurd on the afternoon of March 4, 2022, stating that she had not received Roemer's payment. At 2:26:50 PM, Hurd then texted Plaintiff, "…The title company says they have not received the wire and they have not heard from your regarding the documents…." This text was Plaintiff's first notice that his wire payment had been intercepted.

19. Plaintiff alleges that Doe, the hacker, gained access to his personal identity, including Plaintiff's email account through the negligence of Hurd when she transmitted Roemer's private information, including his email and contact information to Shelton. At all pertinent times, Hurd was acting as an employee or authorized agent for Tim Dutton, Tim Dutton d/b/a Tim Dutton Group, and/or Parks Village and Parks Village d/b/a Parks Realty and said negligence is binding upon all of these Defendants.

20. Plaintiff further alleges, in the alternative, that Doe, the hacker, gained access to his personal identity, including Plaintiff's email account, through the negligence of Shelton when she corresponded to Hurd's initial communication and referral of the purchase contract to "Title." At all pertinent times, Shelton was acting as an employee or authorized agent for Uptown Title and said negligence is binding upon said Defendant. Further, Dutton, at all pertinent times, was acting in his capacity as the principal of Dutton Group and as an authorized agent for Parks Village.

21. As a result of the negligence set forth above by Defendants, individually and collectively, Plaintiff has been defrauded out of $343,817.28, plus the loss of his investment in the West End Residence.

22. Defendants Hurd, Dutton, and Shelton, knew, or should have known, by their acts and non-acts, that one or more of their accounts had been hacked and that Doe had gained access to Plaintiff's email account. Said acts and non-acts were binding on their employers and/or supervisors, Dutton Group, Parkes Village, and Uptown Title, respectively, and constituted violations of multiple Federal and State of Tennessee Statutes for which Plaintiff is entitled to recover treble damages, attorneys' fees, and his costs as set forth herein.

23. Defendant Doe, by hacking into one or more of the accounts of Defendants Hurd, Dutton, and/or Shelton violated multiple Federal and State of Tennessee Statutes for which Plaintiff is entitled to recover treble damage, attorneys' fees, and his costs as set forth herein.

**COUNT ONE: NEGLIGENCE AND GROSS NEGLIGENCE**

24. Plaintiff adopts by reference and incorporates herein the allegations set forth in Paragraphs 1-23.

25. Defendants Hurd, Shelton, and Dutton knew, or should have known, that one or more of their email accounts had been hacked. Said Defendants also knew, or should have known, from prior transactions between Defendant Hurd and Plaintiff, that Plaintiff communicated and transacted business with Defendant Hurd by his personal smartphone device. Accordingly, as previously alleged, Defendants Hurd, Shelton, and Dutton were on notice, or should have been on notice, that communications with Plaintiff had been hacked and, despite their knowledge that Plaintiff utilized his personal smartphone device for those communications, they failed to confirm that Plaintiff had the correct information needed for the wiring of funds.

26. Defendants Hurd, Shelton, and Dutton were licensed real estate professional agents and knew, or should have known, of the risks of hackers invading their computer systems, particularly given the large sums of money that are customarily exchanged in real estate transactions; thus said Defendants owed a duty of care as professionals in this industry to protect clients, including Plaintiff, from harm. Said Defendants breached this duty of care, resulting in harm and loss to Plaintiff.

27. Said Defendants' acts and non-acts were negligent and reckless, particularly given the large sum of funds subject to their instructions; said acts and non-acts, were with the authorization and/or consent of and thus binding upon their respective employers and supervisors, Dutton Group, Parks Village, and Uptown Title. Accordingly, Plaintiff seeks both compensatory and punitive damages from Defendants Hurd, Shelton, Dutton, Dutton Group, Parkes Village, and Uptown Title.

28. Defendant Doe, by his actions, was not only negligent and reckless by defrauding Plaintiff of $343,817.28, but also grossly negligent and subject to criminal and civil penalties as set forth herein, including compensatory and punitive damages to Plaintiff.

29. The actions of Defendants proximately caused Plaintiff's damages.

**COUNT TWO: VIOLATIONS OF TENN. CODE ANN. § 39-14-601, *ET SEQ*.**

30. Plaintiff adopts by reference and incorporates herein the allegations set forth in Paragraphs 1-29.

31. Tenn. Code Ann. § 39-14-601, *et seq.*, Tennessee Personal and Commercial Computer Act of 2003, as amended, sets forth multiple protections for numerous acts and non-acts involving a computer or computer network. These provisions include, without limitation, interception of data from computer systems.

32. Tenn. Code Ann. § 39-14-602 (a) states in part:
> Whoever knowingly, directly or indirectly, ...causes to be accessed ...computer software, computer program, data, computer, computer system...for the purpose of...[(a)(3)] ...effecting the creation or alteration of ...an electronic transfer of funds with the intent to disrupt, alter, misappropriate, or commit fraud violates this subsection (a)….

33. Subsequent provisions of Tenn. Code Ann. § 39-14-602 (b) set forth additional violations, including but not limited to, addressing anyone who, intentionally and without authorization, directly or indirectly, accesses any computer system [(b) (1)] or accesses any computer network for the purpose of maliciously gaining access to computer material [(b)(4)]. Of note, Tenn. Code Ann. § 39-14-602 (b) (1) concludes as follows: "[O]perating a computer network in such a way as to allow anonymous access to that network shall constitute implicit consent to access under this part..."

34. Defendant Doe, by his actions, violated Tennessee Code Ann. § 39-14-602

35. Defendants Hurd, Shelton, and Dutton, by operating and maintaining their computers in such a way as to allow their networks to be hacked by Doe, resulting in damages to Plaintiff, also violated Tenn. Code. Ann. § 39-14-602

36. Under Tenn. Code Ann. 39-14-604, Plaintiff is allowed recovery of his damages, including costs of this action and loss of any profits.

**COUNT THREE: VIOLATIONS OF TENN. CODE ANN. § 47-18-5201 *ET SEQ*.**

37. Plaintiff adopts by reference and incorporates herein the allegations set forth in Paragraphs 1-36.

38. Tenn. Code Ann. § 47-18-5201, et seq., Anti-Phishing Act of 2006, as amended, sets forth multiple protections for persons use of electronic mail messaging and use of the Internet.

39. These sections include, but are not limited to, designation of acts or non-acts of "...any person to represent oneself, either directly or by implication, to another person, without the authorization or permission of such other person, through the use of the Internet, electronic mail messages or any other electronic means...to solicit, request, or take any action to induce a resident of this state to provide identifying information or identification documents..." as unlawful acts. Tenn. Code Ann. § 47-18-5203(a).

40. Further Tenn. Code Ann. § 47-18-5203 (b) makes it unlawful for any person "without the authorization or permission of the person who is the subject of the identifying information, with the intent to defraud, for such person's own use or the use of a third person.... to … (1) [F]raudulently obtain, record or access identifying information that would assist in accessing financial resources.... of such person, [or]… (2) ]O]btain goods or services through the use of identifying information of such other person...."

41. Tenn. Code Ann. § 47-18-5204 grants aggrieved persons the right to bring a civil action and not only recover the greater of actual damages or five hundred thousand dollars ($500,000), but also, under Tenn. Code Ann. § 47-18-5205, to seek damages for violation of the Tennessee Consumer Protection Act, including treble damages and attorney fees and costs.

42. Defendant Doe, by his actions, violated Tenn. Code Ann. § 47-18-5203 and is liable for all damages set forth in Tenn. Code Ann. §§ 47-18-5204 and 47-18-5205.

43. Defendants Hurd, Shelton, and Dutton, by operating and maintaining their computers in such a way as to allow their networks to be hacked by Doe, also violated Tenn. Code Ann. § 47-18-5203 and are liable to Plaintiff for those damages set forth in Tenn. Code Ann. §§ 47-18-5204 and 47-18-5205.

**COUNT FOUR: VIOLATIONS OF TENN. CODE ANN. § 47-18-2101, *ET SEQ*.**

44. Plaintiff adopts by reference and incorporates herein the allegations set forth in Paragraphs 1-43.

45. Tenn. Code Ann. § 47-18-2101, Tennessee Identity Theft Deterrence Act of 1999, as amended, sets out the prohibited practices leading to identity theft. Pursuant to Tenn. Code Ann. § 47-18-2104, Plaintiff provides the office of the Tennessee Attorney General with a copy of this Complaint.

46. Tenn. Code Ann. § 47-18-2103 states as a prohibited and unlawful practice of "...any person to directly or indirectly engage in identity theft; or...in any unfair, deceptive, misleading act or practice for the purpose of directly or indirectly engaging in identity theft." Tenn. Code Ann. § 47-18-2102 provides definitions for multiple pertinent terms under this Act. Including "Financial Document", and "Identity Theft":

13

> 5. Financial document: means:
>
> [A]ny...check or checking account information or number, ...or similar financial account or account number ....
>
> 7. Identity theft means:
>
> B. Otherwise obtaining, possessing, transferring, using or attempting to obtain, possess, transfer or use, for unlawful economic benefit, one (1) or more financial documents of another person....

47.     Tenn. Code Ann. § 47-18-2104 allows private rights of action and includes within possible remedies if the identify theft was engaged is willfully or knowingly, recovery of three (3) times the actual damages and reasonable attorneys' fees and costs.

48.     Defendant Doe, by his actions, violated Tenn. Code Ann. § 47-18-2103, and is liable for all damages set forth under Tenn. Code Ann. § 47-18-2104.

49.     Defendants Hurd, Shelton, and Dutton, by operating and maintaining their computers and avenues of communications with each other and with Plaintiff in such a way as to allow their networks to be hacked by Doe, resulting in damages to Plaintiff, also violated Tenn. Code Ann. § 47-18-2103 and are liable for all damages set forth under Tenn. Code Ann. § 47-18-2104.

## COUNT FIVE: VIOLATION OF § 18 U.S.C. 1030, *ET SEQ.*

50 .    Plaintiff adopts by reference and incorporates herein the allegations set forth in Paragraphs 1-49.

51.     18 U.S.C. 1030, *et seq.*, the Computer Fraud and Abuse Act ("CFAA"), expressly prohibits, in part, persons intentionally accessing protected computers without authorization or exceeding authorized access and obtaining information from protected computers [§ 18 U.S.C. 1030(a)(2)(C)]; persons knowingly and with intent to defraud accessing a protected computer without authorization or exceeding authorized access to obtain anything of value and further a

14

fraud [*Id*. 1030(a)(4)]; persons knowingly, intentionally, and without authorization causing the transmission of a program, information, code, or command to a protected computer [*Id.*1030(a)(5)(A)]; and persons intentionally accessing a protected computer without authorization and, as a result of such conduct, recklessly causing damage and loss [*Id*. 1030(a)(5)(B) and 1030 (a)(5)(C)].

52. Plaintiff's electronic communications with Hurd, Shelton, and Dutton were in the course of interstate communications and thus involved "protected computers" as that term is defined under 18 U.S.C § 1030(e)(1-2).

53. Defendant Doe intentionally accessed one or more of the protected computers of Defendants Hurd, Shelton, and Dutton in violation of the above noted statutes, directly resulting in economic damages to Plaintiff exceeding Five Thousand ($5,000.00) Dollars.

54. Defendants Hurd, Shelton, and Dutton knew, or reasonably should have known, that their protected computers had been hacked and, despite this notice, thereby knowingly transmitted Plaintiff's confidential and protected information to the hacker, Defendant Doe. Said acts and non-acts were without Plaintiff's authorization and/or vastly exceeded Plaintiff's authorization and therefore violated the above noted statutes, in particular § 1030(a)(5)(A), resulting in damages to Plaintiff in excess of Five Thousand ($5000.00) Dollars. Said Defendants' acts and non-acts are binding upon their employers and superiors, Dutton Group, Parks Village, and Uptown Title, respectively.

WHEREFORE, PREMISES CONSIDERED; PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:

1. That process be issued and served on the Defendants in accordance with applicable Federal Rules of Civil Procedure.

2. That a jury be empaneled to hear this cause.

3. That Plaintiff be awarded recovery of $343,817.28.

4. That Plaintiff be awarded treble damages.

5. That Plaintiff be awarded punitive damages in an amount to be determined at trial;

6. That Plaintiff be awarded general relief; and

7. That Plaintiff be awarded his reasonable attorney fees and costs.

Respectfully submitted,

/s/ Tara L. Swafford
THE SWAFFORD LAW FIRM, PLLC
Tara L. Swafford BPR # 17577
W. Lee Maddux BPR # 01235
Elizabeth G. Hart BPR # 30070
321 Billingsly Court, Suite 19
Franklin, Tennessee 37067
Telephone: (615) 599-8406
Facsimile: (615) 807-2355
tara@swaffordlawfirm.com
lee@swaffordlawfirm.com
betsy@swaffordlawfirm.com

*Attorneys for Plaintiff*